SOUTHWEST REALTY CO. et al. v. BARRON.

No. 10518.

Court of Civil Appeals of Texas. Galveston.

Dec. 9, 1937.

Rehearing Granted Jan. 20, 1938.

Rehearing Dismissed March 2, 1938.

Victor C. McCrea, of Fort Worth, and T. E. Richards, Jr., of Houston, for plaintiff in error Southwest Realty Co.

Raymond E. Buck, of Fort Worth, for plaintiffs in error Baltimore Nat. Bank and G. Roy Mueller.

Raymond P. Elledge and Vernon Elledge, both of Houston, for defendant in error.

CODY, Justice.

In this court the sole question that will be considered is whether the trial court entered the correct judgment. In answer to special issues submitted to them, the jury made findings to the effect that a series of three notes, totaling about $2,500, given by defendant in error and her husband, since deceased (but to all of whose rights she has succeeded), to the National Bond & Mortgage Corporation on October 8, 1928, were usurious. These three notes were secured by two separate deeds of trust on the same real estate, belonging to the husband, situated in Harris county. This series of notes was given in renewal of a note shortly theretofore given by defendant in error and her deceased husband to the Real Building & Loan Association, secured by a deed of trust on the same property belonging to the husband, and which on October 8, 1928, belonged to the National Bond & Mortgage Corporation. This original note will be referred to as the $1,900 note.

Now from the undisputed evidence it appears that, according to the terms of the renewal contract, a payment fell due under it on December 8, 1931, which defendant in error failed to make, and that the National Bond & Mortgage Corporation, acting under the terms of the renewal contract and exercising the right of acceleration conferred by it, did, on December 14, 1931, declare the entire indebtedness due, and in due course thereafter trustee's sales were held, and the property was foreclosed.

Defendant in error brought this suit and denounced the renewal notes as usurious; alleged that there was unpaid on the $1,900 note at the time the renewal notes were executed only $1,854.64. She alleged that, since the date of the renewal notes, she had paid to the defendant holders of such notes the sum of $1,000, which defendant note holders had largely applied to the payment of usurious interest, but which must by law be applied to the reduction of the principal. Further, that by reason of applying such thousand dollars to the payment of usurious interest, instead of to the principal of such usurious renewal notes, a supposed default occurred in payments on such notes on December 8, 1931, and the holders thereof attempted to accelerate their maturity. That thereafter attempted sales foreclosing the separate deeds of trust were held, and trustee's deeds were given purporting to convey such property. But that, at the time it was attempted to mature the renewal notes, they were not in default, and plaintiff owed thereon only the sum of $854.64, and the foreclosure sales were void. She asked to have the trustee deeds set aside. She confessed she owed on such notes the sum of $854.64, and pleaded a tender of payment into court. In the alternative, in certain contingencies not necessary to set forth, she pleaded that the notes were barred, as having been accelerated and declared due on December 14, 1931, more than four years before the defendant note holders filed their answers to her suit.

The defendant note holders denied generally the allegations of usury; they also by way of cross-action, in case the trustee's deeds at the foreclosure sale were found irregular or were set aside, sued on the renewal notes and to foreclose the deeds of trust securing their payment. In the alternative, and in case the renewal notes were found to be usurious, they declared they

elected to stand on the $1,900 note, and by way of alternative cross-action, sued defendant in error for the balance due on such original note, and to foreclose the deed of trust which secured its payment.

After the jury had made findings to the effect that the renewal notes were usurious, the defendant note holders on February 6, 1936, moved the trial court to enter judgment for them on the verdict; and, before the court acted thereon, filed a motion for judgment notwithstanding the verdict, which the court held under advisement until March 13, 1936, and then found: (1) That the two trustee's sales held under the deeds of trust securing the renewal notes did not constitute an election by their holders to claim under them instead of under the original $1,900 note; (2) that the defendants, by filing their motion for a judgment notwithstanding the verdict, elected to claim under the $1,900 note, and abandoned all claim under the renewal or usurious notes; (3) that in exercising the rights given them under the usurious contract to accelerate the maturity of the renewal notes, on December 14, 1931 (because of plaintiff's failure to pay the installment due thereon, according to the face and tenor of the renewal notes, on December 8, 1931), defendant holders of such renewal notes thereby in fact matured the original $1,900 note. That consequently the $1,900 note which was thus accelerated to mature on December 14, 1931, was barred by the lapse of the four-year period of limitation, Vernon's Ann.Civ.St. art. 5527, at the time defendant note holders declared thereon in their alternative cross-action against plaintiff (defendant in error here).

From the record as presented here, we are unable to say that the court erred in holding that the defendant note holders had abandoned their usurious contract of October 8, 1928, and thereby lost their right to recover the balance due under it of $854.64, and which defendant in error admitted she owed, and tendered into court. But it is clear that, in exercising the right to accelerate the maturity of the renewal notes on December 14, 1931, which right they held under the usurious contract, defendant note owners did not exercise the right of acceleration conferred on them by the original legitimate contract. In abandoning the usurious contract, the note owners must not only be taken to have abandoned the foreclosure sales made under such contract, but also their acceleration of maturity under which the foreclosure sales were had. So far as appears in the state of the record, the $1,900 note was not matured until defendant owners filed a cross-action thereon in this suit.

This case appears to have been fully developed in the trial court. But all we can be sure of, in the state of the record here, is that defendant note owners should either have been awarded judgment for the balance of $854.64, admittedly due on the usurious contract, or they should have been awarded judgment for the balance due on the original legitimate contract. For the court to have denied recovery on not only the usurious contract, but also on the legitimate contract is manifest error apparent on the face of the record. It may be that on motion for rehearing the parties can satisfy us on which contract the recovery should have been awarded, and thereby avoid a retrial. But not being able to determine at this time on which contract judgment should have been rendered, we are forced to remand the cause for a new trial.

Reversed and remanded

PLEASANTS, C. J., absent.

## On Motions of All Parties for Rehearing.

### CODY, Justice.

The motion for rehearing of plaintiff in error Southwest Realty Company is refused. The position sustained by said company to this litigation was not made to appear in our original opinion. But said company was purchaser of the property at the foreclosure sale held under the deeds of trust, which defendant in error had given on such property to secure the payment of such renewal notes, and which renewal notes, as appears from our original opinion, the jury found, on ample evidence, to have been usurious. Said Southwest Realty Company is undertaking in this litigation to recover the title and possession of the property in trespass to try title.

Plaintiffs in error Baltimore National Bank and G. Roy Mueller, trustees, are the holders of the original note for $1,900, and of the renewal notes. For convenience, they will hereafter be referred to as noteholders, or simply as the Baltimore National Bank. In their motion for rehearing the first request made is, that judgment be here rendered against defendant in error in favor of the note holders on the $1,900 note; the alternative request made is, that

judgment be here rendered against defendant in error in their favor for the sum of $854.64, the amount defendant in error admitted she owed the note holders on the renewal notes, and tendered into court. It does not appear in the record in this case what amount now remains due on the $1,900. There may be some question as to whether such note should be allowed to accumulate interest during the period the note holders were trying to enforce payment of the renewal notes and while defendant in error was tendering payment thereof in the sum of $854.64. In any case, it affirmatively appears that all payments that were made on the indebtedness were made in the form of installments called for by the renewal notes, and made at the times such installments matured (until the claimed default of December 8, 1931), and were credited on such renewal notes. It further affirmatively appears that the installments called for by the original $1,900 note matured in different amounts, and on different dates from those of the renewal dates. In an attempt to show this court the amount now justly due on the indebtedness, as it is evidenced by the $1,900 note, the Baltimore National Bank has submitted in connection with its motion for rehearing an unsworn report of a certified public accountant which purports to break down the credits on the renewal notes, and reapply them to the original note, and thus arrive at and determine the amount that is now due on the original note. Aside from the fact that defendant in error might want to test the qualifications of such public accountant, this report, among other objections, is ex parte evidence, and cannot be introduced into the record of this case at this time, in this way. Said plaintiff in error's motion for rehearing, except to the extent hereinafter indicated, is refused.

Defendant in error, in her motion for rehearing, earnestly insists that we should have affirmed the judgment of the trial court, instead of reversing and remanding it; and, in the alternative, asks that we here render judgment for the note holders against herself for the sum of $854.64, the amount she admitted she owed in the trial court, and tendered into court. In support of her contention that the judgment of the trial court should be affirmed, defendant in error earnestly insists that the trial court correctly held that the original note for $1,900 was matured by the note holders on December 14, 1931, by a letter written by

R. J. James, an employee of the National Bond & Mortgage Company, which reads:

"Effective December 8, 1931, there was due and payable a monthly installment on this loan which was not paid when due. We have therefore placed this loan in the hands of our attorneys, Vinson, Elkins, Sweeton & Weems for collection, and advise you accordingly that *this loan has been declared fully due and payable,* together with attorneys' fees." (Italics those of defendant in error.)

It is true that the *loan* which is evidenced by the renewal or usurious contract is the same identical indebtedness as that evidenced by the original or lawful contract. But, as was cogently and prominently stated by defendant in her original brief on the original hearing, "At the outset it should be observed that *the rights of the parties in so far as they claim under the renewal contract are wholly different from the rights to which they are entitled when they claim under the original note* for $1900.00 made payable to Real Estate Building and Loan Association." (Italics ours.)

Among the rights of the note holders, in so far as they claimed under the renewal contract, was the right to accelerate the maturity thereof for default in payment of any installment due thereunder. Such right of acceleration was but one among several related rights, which may be described as the unit or complex of rights belonging to the note holders. Another of these related, this complex of rights, was the right to have the trustee foreclose the deed of trust lien, after maturity had been brought about by the exercise of such right of acceleration. And this right of foreclosure involved the right of the trustees to execute and deliver trustees' deeds, the recitals of which, by said complex of rights, were given a particular evidentiary effect. This complex of rights which belonged to the note holders by the terms of the renewal contract was separate and distinct, or to employ defendant in error's words, was *wholly different* from the complex of rights to which they were entitled under the original contract. And while it is true that the note holders had the right to accelerate the maturity of the original note for any default in making payment thereunder, the letter of December 14, 1931, furnishes no evidence that they were at that time proceeding under the original contract. No default occurred under the original contract

on December 8, 1931; so the statement in the notice that "Effective December 8, 1931, there was due and payable a monthly installment on this loan which was not paid when due," could not have been understood by defendant in error as the expression by the note holders (or their agent) of an intention to enforce the terms of the original contract. By the terms of the renewal contract, an installment was due on the date specified, which was not then paid. So defendant in error understood, and could only have understood, that the note holders were standing on the renewal contract, and were undertaking to exercise the right of acceleration, conferred by the renewal contract, according to the terms of the renewal contract. The fact that the renewal contract was usurious and unlawful left it open to the note holders to fall back on their original or lawful contract. Manning v. Christian, 124 Tex. 517, 81 S.W.2d 54; Cain v. Bonner, 108 Tex. 399, 194 S.W. 1098, 3 A. L.R. 874. But had the renewal contract provided for a lawful rate of interest, the note holders would have had no right to fall back on their original, their lawful contract, or any part of it. A right to accelerate the maturity of an installment loan is necessary neither to its validity nor to its negotiability. And in so far as the renewal contract is concerned, the fact that the original contract provided for acceleration of maturity was but accidental and irrelevant. In any event, nothing can be more certain from the evidence in the record in this case than that, if the maturity of the original note was accelerated, such acceleration occurred as an accidental and unintentional result of the note holders attempting to mature the renewal notes in conformity with the terms of the renewal contract. While it may be possible to imagine a case of a note holder accidentally and unintentionally exercising his right to mature a note, and where the payor of such note was misled and caused to change his position because of the acceleration of maturity, there is nothing of that sort here. In sending defendant in error the notice of December 14, 1931, the note holders were obviously seeking to enforce the terms of the renewal contract, and, as already stated, defendant in error necessarily, and in fact, understood this was so. Following this notice, the note holders caused foreclosure, under deeds of trust given to secure the payment of the renewal notes, to be carried out, conformable to the provisions of the renewal contract. And, just as the trustee's deeds delivered under the terms of the renewal contract were the last steps taken by the note holders in an attempt to exercise the complex of rights, belonging to them under the renewal contract, looking to the application of their security to the payment of the loan; just so the notice of December 14, 1931, was the first of these steps. If, as held by the trial court, the filing by defendants in error of a motion to recover judgment on the original note non obstante veredicto constituted an election by them to abandon the renewal or usurious contract and all proceedings had thereunder, then it likewise must be held to constitute an abandonment by them of the acceleration of the maturity of the renewal notes. We repeat, the fact that the original note provided the note holders with the right to accelerate the maturity, is wholly irrelevant. For the note holders at no time after the renewal notes were executed and delivered, and before the jury found them to be usurious, attempted to enforce their original contract. In other words, their abortive attempt to exercise the right to accelerate maturity, which they held by the terms of the renewal contract, was not an attempt—abortive or otherwise—to exercise the right of acceleration of maturity which they possessed under the original contract. The evidence that the note holders intended, by the letter of December 14, 1931, to exercise the right to accelerate maturity conferred on them by the renewal contract, is not evidence that they exercised the right to accelerate maturity conferred on them by the original contract. It is proof that they did not. For, as pointed out by defendant in error, "the rights of the parties in so far as they claim under the renewal contract are *wholly different* from the rights to which they are entitled when they claim under the original note." Were the construction sought to be placed on the notice of December 14, 1931, tenable, it would in practical effect work a forfeiture. But, as indicated, at perhaps too great length, the proper construction to be placed on the notice is not even doubtful.

The alternative requests in the motions for rehearing of both defendant in error and the note holders are in substantial conformity. Both seek to have judgment here rendered against defendant in error and in favor of the note holders for the sum of $854.64, in preference to having the cause remanded for a new trial. While, in point of strict technicality, our former judgment reversing and remanding the cause was correct, we have concluded that

996

justice will be better served by reconciling the slight differences between the alternate requests of the parties, and grant such requests as reconciled. The former judgment of this court reversing and remanding the judgment of the trial court is therefore set aside, and the judgment of the trial court is now affirmed as to Southwest Realty Company, and is otherwise reversed, and judgment is here rendered that plaintiff in error note holders recover against defendant in error the sum of $854.64 (payment of which defendant in error tendered in the trial court), together with interest thereon at the rate of 6 per cent. per annum from December 9, 1937 (the date of the original judgment in this court); and the liens given by defendant in error to secure the payment thereof are established as valid and subsisting; one half of the costs of the trial court are adjudged against plaintiff in error note holders, and the other half against S. W. Realty Company and one half of costs of appeal are adjudged against defendant in error, the other half of costs of appeal are adjudged against Southwest Realty Company.

Motion for rehearing of Southwest Realty Company refused; motions for rehearing of other parties granted in part and in part refused.

PLEASANTS, C. J., absent.